May it please the court, Judy Madewell on behalf of Isaac Ramos, Mr. Ramos pleaded guilty to possessing and conspiring to possess cocaine with the intent to distribute it. The issue on appeal is whether the district court clearly erred in applying an aggravated role in the offense adjustment to Mr. Ramos's sentence. For the aggravated role, the two-level aggravated role adjustment to apply under guideline 3B1.1 subsection C, the defendant must have been the leader, organizer, supervisor, or manager of one or more other participants or the defendant must have exercised management responsibility over the property, assets, or activities of the criminal organization. The role in the offense adjustments are about relative responsibility and that's set out in the guideline background notes. Here the district court adopted the revised pre-sentence report that recommended the aggravated role increase. The initial pre-sentence report did not recommend an aggravated role increase. The facts in the conduct set off its conduct, both the initial report and the revised report are the same. The initial report said Gámez, Mr. Gámez, the co-defendant, negotiated with the undercover agent and that Ramos supplied the cocaine. Based on that, the PSR said there's not sufficient evidence to determine role in the offense for either Gámez or Ramos. In the revised pre-sentence report, it says the same thing in the role in the offense section, and it says no sufficient evidence to determine Gámez's role, but then it says Ramos gets a role, gets the two-level aggravated role, and it gives three reasons for this. One, that he supplied the cocaine in the transaction. Two, that he coordinated with his cocaine supplier, Castillo, and three, that he invited Castillo, who had a gun, to accompany them to the drug transaction. The first fact is incorrect. It was rebutted at the initial sentencing. Now, the government says numerous times in its briefing that Ramos offered no rebuttal evidence, and that's incorrect. He filed written objections to the aggravated role adjustment, and there was substantial rebuttal evidence that came in from the prosecutor himself at the initial sentencing. So the issue at the initial sentencing was whether, because the initial pre-sentence report didn't recommend a role. So the issue there was, should he get a two-level increase for having a firearm, because Castillo had a firearm. I don't want to minimize the importance of role up or down, but do you know of any circuit case that has reversed, as clear error, a two-point role enhancement, ever? Yes, but the government conceded. The government agreed that it should be remanded. It does go to discretion, the court. Yes, yes. It is a very difficult standard to meet, but it is not an impossible standard, or there would be no review at all. I do agree. There are some obscurities in this case. In other words, that unusual first PSR says no enhancement, because then naturally we would look at what's the fact that appears that enhances having originally not. I have two questions. Legally, wouldn't the district court have adhered to our en banc Delgado opinion in saying a supplier is an organizer or manager of assets? It may be wrong textually and according to every other circuit, but our en banc Delgado opinion seems to say you get the enhancement, not an upward departure. Do you have a thought on that? Oh, yes. I think that in terms of the difference between the enhancement and the adjustment, the upward departure, I think courts are following the Delgado en banc decision. There have been some questions by some of the judges and other opinions on whether that was actually correct or not, because it is actually set out in the guideline as a departure. But if you put Delgado en banc together with the first PSR, where there was no objection to Gamez's statement that he supplied me with cocaine, wouldn't that be enough by itself to get a two-point organizer of assets enhancement under Delgado? I would say no, because the facts in Delgado are different. And this is a factual determination, which is one of the reasons why the standard is so difficult. Plus, the PSR didn't recommend it, knowing all that to begin with. Right. Exactly. There's no recommendation. And at that initial sentencing hearing, the prosecutor makes it clear what the role is. He says, the way it unfolded is, Gamez contacted Ramos. Ramos didn't have the cocaine. Ramos reached out to his childhood buddy, Castillo. Castillo got the cocaine from a third party. The prosecutor said, Ramos is a broker or middleman. And the district court understood what the prosecutor was saying, because the district court replied, show me where it says in the PSR that Castillo is the supplier. If Castillo were the supplier, and if your client was the one who reached out to the supplier, then it would look like he's coordinating two people. Yes, but that still wouldn't be sufficient. Wouldn't be. Why not? Well, there are cases that hold that you can be, you can get an aggravated role as, if you're a broker or middleman. But the facts in those cases are so different. But you have to establish it's clear, you have to establish either legal or factual error. Are you accepting that assumption that he did both, he was in the middle, but for him there would have been no supply? Yes, I'm accepting that. And that's not the standard for role in the offense. It's not a but-for standard. Okay, so then the revised PSR, when it says he recruited or invited Castillo, you accept that? It never said he recruited. Okay, so he invited him. In fact, it's very interesting. It said he invited him, and it's very interesting. The district court never said he recruited, he directed, he ordered. It was he invited. He was his guest. So you accept that? He brought him to the party. I think that fact is plausible. I think that fact is plausible. I think there are other inferences that could be drawn, considering there's no evidence Ramos ever had physical control of the drugs. And it's quite likely that Castillo, who got the drugs and had known Ramos his entire life and knew he was mildly mentally retarded, chose to come along and kept control of the drugs. They were in the front seat on his lap at the drug transaction. My difficulty is just, would we reverse as clear error if you accept the fact that he is the critical guy who not only is dealing with the end seller, but also is the one who invites in the ultimate supplier? It sounds like he's organizing, leading, managing more than one person. And it may be thin facts, but would we— There is no—the district court did not make any findings that Ramos was managing Gomets. I mean, the confidential—I mean, this is also about relative responsibility. And the confidential informant here informed the DEA that Gomes and Gobaldon were trafficking in cocaine. And Gomes and Gobaldon were negotiating with the undercover agent. And Gomes set up the location for the drug deal. And then Gomes contacted Ramos, who contacted Castillo. And then Gomes picked up Ramos and Castillo at Church's Chicken and drove them to the mall. And Gomes is driving his relatively new Mustang, and Castillo's in the front seat with the drugs and a gun. But Gomes gets no role adjustment. There's no evidence to support a role adjustment. That's a true fact. But what law says that's relevant legally, what some other co-defendant gets in terms of role? I think that the sentencing guidelines say that. The sentencing guidelines. In 3B1.1, in the background, it says the concern about role in the offense is relative responsibility. What law says we have to look at another defendant's sentencing as to whether your client has an enhanced role or not? They are co-defendants in this case. I know what they are factually. I'm asking you for a case that says that the district court's got to look at a different defendant's sentencing when it makes a role upward or downward departure. Well, I will look for a case while I'm sitting here, when I'm done. But I will say that the sentencing guidelines set out factors this court is to consider. And those factors have to do with relative responsibility. Decision-making authority, nature of participation, recruitment of accomplices, larger share of the fruits of the crime. This court's cases have talked about control over the drugs, over the storage facilities, over the transportation, length of involvement. Ramos was involved for one day. Preparing or packaging the drugs, there's no evidence of that. How other participants referred to Ramos. Gámez called him patitas. Boss, in Spanish, is jefe. Patitas is little legs. In fact, colloquially, it's little running legs. So you do have to, the guidelines tell us that we have to consider these factors. And it is a very difficult standard. The district judge just observed that Mr. Ramos had what he called limited intelligence. And I think there was some evidence presented that he had an IQ of 63, which is pretty low. I'm just asking you, is there any case law on whether that's a relevant consideration? Yes, there is a case that talks about low IQ. That case, however, the court found that there were a number of other factors. Well, this is a, in the case the government cited is a Sixth Circuit unpublished case. And the defendant had low IQ, but there was information that he had, the court found he recruited a co-defendant, directed the co-defendant to get a rental car for him, directed the co-defendant to drive him to drug sales, directed the co-defendant to deliver drugs for him, called the defendant, my man, and the defendant got a larger share of the profits. So we don't have anything like that in this case. I mean, there's no finding that he recruited Castillo. We know that that's a childhood buddy of his, and there's clearly no evidence that he had any kind of management or control over Gomez. Let me ask you a couple of questions. One is, when in this process was the PSR amended, how did that come about? So the original PSR recommended a two-level increase for possession of a firearm. At the initial sentencing hearing, the defense counsel had objected to that, informed the court that the government agreed. And so that was how the government explained Castillo had the gun, Castillo says Ramos had nothing to do with it, we have no evidence that he knew about it. And that's how they came to discuss also this role, you know, why shouldn't Ramos be held responsible for Castillo's actions when he brought him to the party? And so the prosecutor explained, well, he's the broker, he's the middleman, this is how it was set up. So the district court accepts those facts, as set out by the prosecutor, and sustains the objection to the gun enhancement. But the district court is displeased. The district court is displeased because he sentenced Mr. Ramos on a prior drug crime. And he gave him a lenient sentence. And the district court says, because at one point the prosecutor said to him, to the court, that they didn't think that he would actually be eligible for safety valve because of his prior conviction, but it only got one point. But they thought, meaning the government, that 60 months, given this man's mental and physical disabilities, was probably a pretty good hit for this guy. So that's what the prosecutor is saying. But the district court is upset because now, without the gun— So how did it get changed? Without the—the district court, without the gun bump, it made him safety valve eligible, and the district court applied safety valve, and then the district court said, but you're not getting role in the offense. He's thinking minor role. And then he says, but wait, you could get aggravating role because you coordinated this. And so he reset it. It went back to the pre-sentence report. And the pre-sentence report, in its role in the offense, put exactly down what the court had said in sentencing. He advided him. He coordinated with him. And then defense counsel filed an objection to that that put in all these other facts from the government's discovery that talked about how much larger this drug organization was. What's the necessity of amending a pre-sentence report to cause the judge to think something different? Pre-sentence report's not controlling. No, it is not, Your Honor. And it's a piece of evidence. The judge looks at that and so forth. But I'm puzzled by why you would go back and judge, make a different determination, but then go back and change it. Sounds like you're changing the pre-sentence report to meet the judge's, what the judge wants in the pre-sentence report. That is what happened. Because they didn't change the offense conduct at all. No, but the government did, and you assented to, there were sidebars where the government then explained things at the end of the original February 20th sentencing. Yes. Then an addendum's done. You didn't object to the time of it, even though it was really quick. No. When you say you filed a sentencing objection, it was a footnote that disagreed with the invited. On the invited, yes, it was a footnote. Yes. Then we get to the second sentencing, and the court says, do you have any objections? And you said, can we go off the record? Yeah, I don't, I don't know why that happened. I get very frustrated. Because at that point, everyone needs to know, do you dispute the fact of his recruiting inviting Castillo? The court explicitly says, do you? And the record says, let's go off the record. The court comes back and says, anything to put on the record? Nothing. Well, what the court said, first of all, no one ever said recruited or directed. Invited, that's it. Secondly, when they came off that record, if I may complete this, when they came off of that conference, the district court said, well, whoever was the supplier of the cocaine to Ramos is irrelevant, because but for Ramos, this wouldn't have happened. But that's not the standard under the guideline. Thank you. You've saved time for rebuttal, Ms. McGill. Ms. Raba? Good morning. Is it Raba? Did I pronounce it right? Yes, yes, Your Honor, you sure did. Thank you. I'm Angela Raba. I represent the United States of America. I'm with the Western District of Texas. I think I'd like to begin the argument by clarifying that under the clearly erroneous standard which applies here, the question is whether or not the district court's holding is plausible in light of the record as a whole. So although the facts in the record here are limited, this court has stated that in making a role in the offense determination that the defendant's role can be deduced inferentially from available facts. So in this case, the PSR talks about Gomez's negotiations with the undercover agent, and ultimately that was changed, and Gomez tells the undercover agent that he could only deliver three kilograms and maybe two later. Now, from this, it could be inferred that Gomez was communicating with someone else in order to get the cocaine. Now, the PSR also states that Gomez made arrangements to meet up with the agent at a mall, and when the meeting takes place, Gomez shows up in a car with Ramos and another person named Castillo. The important thing about that scenario is that the district court in the final sentencing hearing made a specific finding that Gomez never knew Castillo before he showed up at the meeting place. So from those facts, it can be inferred that Ramos and Gomez were the ones who were communicating about the three kilograms of cocaine. It can also be inferred that Ramos communicated with Gomez about the location and time of the meeting. All the relationship between Gomez and Ramos was before the government and the district court at the original sentencing. The government didn't object to the probation saying there is no evidence for an enhanced role. So you aren't saying the government was wrong based on the relationship between Gomez and Ramos. No, no. What I'm saying, Your Honor, is that aside from the relationship between Gomez and Ramos, there was a separate relationship that couldn't be inferred between Gomez and Castillo. Okay, but obviously the first sentencing says no enhancement for Ramos. So in order to three days later on the 22nd suddenly give an enhancement, some evidence that the defendant could test must have been presented. Yes. Okay, so just focus in on that. Okay. In terms of evidence, Your Honor, I think what was stated in the PSR about what went down did not change. But what's important here is what the district court, when the district court had the sealed discussion with regarding what went on, the prosecutor explained what happened during the briefing. Yes, and talks about the supply chain. Exactly. Okay, so what case says a prosecutor's proffer sidebar is enough factual evidence to allow an enhancement? Your Honor, I don't believe any case is sidebar. No case would. It's got to be factual by a preponderance. So then when we look at the addendum that suddenly says you get two points, as I read it, it just says on available information. But in the revised PSR, which came after the original sentencing hearing, there was a revised PSR. And all it says is based on available information, Ramos is, and I could say now, viewed as an organizer. So what's the available information that the PSR has gotten? I think it's not new information, Your Honor. It's an explanation of the information that's already in the PSR. So the PSR, for example, it says he supplied the cocaine in this transaction. That's clear. The evidence shows that Gamas said he was the supplier. So you're just saying the government changed its mind looking at the same original evidence? Well, Your Honor, the government had not objected to the original PSR. And it was during the original sentencing hearing that all the information became clarified. So what I'm saying is the information in the PSR, which says. Slow down. No enhancement. Probation agrees. Defense agrees. Government agrees. The guy doesn't have an enhanced role. Gamas is running the show. No one disagrees. But now you're telling me something happened in there at that original sentencing where everyone agreed it wasn't that way? No, Your Honor. I'm sorry if I'm being unclear. I'm not saying that the government never conceded. They did not take a position in terms of whether or not. They didn't oppose the PSR. It did not oppose the PSR. And that is. Something new. There has to be something new. And you're saying it was the debriefing. Yes, I think that's basically what changed it. And the district court then in the second sentencing says now we've heard that he organized. That's the verb used. Castillo. And the defense counsel, you don't disagree. They objected to that factually. Is that correct? The defense counsel objected. Objected to the two point enhancement. Yes, they did. OK. Doesn't that trigger two things? They get seven days from the addendum before the resentencing. That didn't happen, right? I'm not certain. It was just one day later. So there's a process problem. But then you get to that next setting. And I would think we have now a material dispute of fact. The court must, under Rule 32, must resolve it. Where does the court assess whether the new facts are true or not? Well, under the original sentencing hearing, Your Honor. And that would have been where any of the facts would have been flushed out. So at the original sentencing hearing, the court notes that it was trying to clarify in its own mind why he wasn't getting the firearm adjustment. And then the court is making it clear he's the supplier of the three kilos. So he's the supplier. But you aren't arguing under Delgado that is why he got two points. It isn't because he supplied drugs. You have never argued that. No, that was not argued below, I don't believe. And it hasn't been argued to us now. It's an interesting legal point. But you have not pressed that as the basis. No, I think the government's brief pretty much is based on the finding that he was an organizer. Of Castillo. Of Castillo. Okay. And I'm asking you, where's the factual support? And you say it's at the first sentencing. I think it is at the first sentencing. But it's in the sealed material. It would be in the sealed material. But it is a proffer. I don't think I know any case law that allows a proffer to support a fact that enhances a sentence. But I think it's not new information as much as clarification of what's in the PSR. And I accept that. But then when the defense objects, I would think the district court would have to resolve it factually. Now, it may be sensitive. You're going sidebar sealed in the first sentencing. Then we have this very unusual off the record, all parties agree at the second sentencing. So there's something that's not being disclosed that appears to me to be the basis for the conclusions about organizing Castillo. But neither side really seems to be addressing that. And it could be a waiver issue on the defense side. But for me, you have to address directly, is that this is stuff that's not being talked about the way we know factually that the two points are added? Well, I think factually you can only rely on what's in the PSR. But I think the court can rely on what the, I don't think. You can rely on it, but you don't turn around and direct what's in the PSR and say, well, I rely on it now. I'm sorry, Your Honor? When the PSR comes in, the district court relies upon that. But then the suggestion is that then the district court suggests that the PSR include this other information. And now we come back to, well, now you're still relying on the PSR, which was supposed to have been an independent determination by the probation office, et cetera, et cetera. I don't understand. I don't understand what's going on. I don't understand what, I don't think, I never asked the district court to revise the report. The report's the report, and then I'll go from there. Well, I think the only explanation for that is that the facts in the PSR were explained more fully. How did Ramos become the supplier? What is the sequence of events for him to become the supplier? Because there is evidence that he was the supplier. And under the explanation that the prosecutor gave, which, again, is not new information, he was explaining to the court how he became the supplier. Well, I don't know the great consequence, but I never thought of a PSR as simply a working draft in August. So when the district court makes a sentence, you go back and fill it in. Well, I think then the only changes that occurred then. I understand that. But that's the concern that's raised by this author record, et cetera, et cetera. I don't see the need for it, frankly. I mean, the district judge has the authority to decide what he wants to decide. I understand that, Your Honor, your concern. Now, if we are relying on what is in the PSR, then that alone, and I think the court was basically saying, and I don't think the PSR, as a matter of fact, the court at the original, I can't remember if it was the original sentencing or the second sentencing hearing. He said, I don't even have to rely on what the prosecutor said. I can rely on the fact that he, Ronald- Let me be clear. I'm not suggesting anything sinister. I'm just trying to understand that sometimes the sentencing gets, it can be somewhat chaotic if you've got a lot of things going on, a lot of moving parts. But the difficulty is that mistakes are made when you get into that kind of shifting things around back and forth, and that's what we're trying to explore. I don't want to give the inference that there's something sinister about it. It's just the difficulties of administering a docket. But again, what the court, referring back to what the court said, was the court said, I don't even have to rely on what was said about the debriefings. The court relied on the fact that Ramos was in communication with Gámez and that Castillo was there. The court made an express finding that Castillo did not know Gámez. So based on that fact, the court could infer that the only reason Castillo was there is by invitation of Ramos, because if Gámez didn't know who Castillo was, he certainly wasn't just going to show up to pass the time. So the court could make a reasonable inference that Gámez had been communicating with Castillo. Now, in terms of having him there during the drug transaction. How does this translate in terms of time, length of sentence? Well, because he was an organizer, he didn't get, he didn't... I understand the mechanics. How does that translate to in time, the sentence? I'd have to refer back to the record for that, Your Honor. We're not talking about a light matter. I mean, you go back and forth resolving this. And so if what's being resolved here is what his sentence is. Right. And I'm just curious as to, I always like to know what the consequence of this is. Well, I think the sentencing, it was because it was the minimum mandatory sentence of 60 months imprisonment. So that was why he had to give them at least 60 because he didn't qualify for the... But I think the guideline range would have been reduced because under 2D1.1, if he had qualified as an organizer, he was entitled to another two levels downward. So I think that there would have been a difference in the sentencing guideline range for that. I think you've got, to me, you have explained the chronology. At the original sentencing, he's going to get the gun two points. The government is just maybe inattentive to the exact rule enhancement. So the government clearly doesn't oppose it. But then suddenly he doesn't get the safety valve. He doesn't get the gun. Court says, this is just not feeling good. Let's redo it. And then we have the debriefing and whatever's said there and the addendum adverts to it and there's going to be a problem. Because if we object to the facts, new facts, that no one really wants to go there. So the district court instead does say exactly what you said. Well, no matter what, Ramos had to deal with at least two individuals to make this happen. That's correct. And that was before the court is an inference in the first sentencing, probably not even disputed by the defense counsel. So then it just comes down to if you're a broker, you're dealing with the street supplier, and you're getting it, do you get two points? Do you have a case that says that? No, not specifically. Do you agree with my framework? Well, I think that that's a good framework in the context of how you would prove an organizer, that someone actually is an organizer of the organization. And as the court said, without Ramos, this wouldn't happen. He was coordinating with Gomez. That was true even at the first sentencing. That is correct. And yet no one asked for the enhancement. Not the original sentencing, Your Honor. And I think, again, and defense counsel did clarify, I don't know what the rationale was for not objecting to this. I think at one point, the prosecutor said that they assumed that he was not going to get safety vows so that he would have been sentenced to 60 months. So that may have been the underlying reason for not objecting to it. But that's just not clear from the record. Anyway, if I can just quickly move to the mental capacity argument. There's no, I'm sorry, before I move on, with regard to what's in the record and what isn't, defense counsel has referred to Castillo as the one who was in possession of the cocaine at the time. That's not in the PSI. And again, as the court mentioned, I think where that came from was the memorandum, the sentencing memorandum of the defense attorney. And it's in there where the defense attorney, the sentencing memo states that he was in the front seat and he was holding the bag. Nowhere in the PSI does it say that. So that's not really in the evidence either in the context of who actually, it doesn't exclude Ramos from being in the middle of that transaction. As a matter of fact, Ramos didn't make any effort to just put Gomes in contact with Castillo. Ramos remained in the transaction. He was there. So there is no indication that Castillo was actually the supplier as opposed to Ramos. And again, referring to the mental capacity, there's no evidence that he had anything more than a mild form of intellectual disability. And they've just failed to show that any limited intellectual deficit prevented him from coordinating with Gomez and Castillo in organizing the cocaine transaction. And with that, I'll get back on time. All right. Thank you, Mr. Robert. Ms. Maidwell, you've saved time for rebuttal. So I believe the reason that this got changed to the second PSR was that the judge was, in fact, very upset that Ramos was now safety valve eligible. And he was upset about that because he had sentenced him previously, acknowledged his disability, and gave him a very reduced sentence. So when he realized that he didn't get—when he found that he didn't get the gun in that bump and he applied the two levels off for safety valve, he was not happy with that outcome. But we are not under mandatory guidelines. We don't have to—we no longer have to feel obligated to make the facts fit an adjustment. The court could have imposed a variance. So in this case— But you didn't object to process. You didn't object to the revised PSR. You didn't say, I need my full seven days after— No. We're just here straight on clear error finding that he had an enhanced rule. Yes. I mean, that is all I raised on appeal. Your reply brief says, I think admirably, while it is correct that Ramos supplied the cocaine by contacting Castillo. So once you say that, that Ramos gives it to Gomes and Ramos supplies it by reaching out, contacting Castillo, that's minimal. It's thin, but I'm not sure that— Yeah, I'm not sure that my words should take precedence over the facts in the case. So you think that's wrong? You don't acknowledge that Ramos— I mean, there's a lot of weight being placed on whether he was the supplier or not. I agree. That's one of the reasons that the PSR said he should get the enhancements. But that's indicating, I think the weight that that's being given is the idea that he himself possessed the drugs or controlled the drugs. And there's no evidence that he had any control over the drugs. I wanted to say about the evidence, about the objection that was filed to the revised pre-sentence report, those facts came from the government's discovery. And it says that in the objection filed. So the fact that Castillo was in the front seat and had in his lap a gift bag with the government's discovery. True. But the only objection you made is there is one inaccuracy in the revised PSR. The revised PSR claims that Mr. Ramos invited Castillo to come along. There is zero evidence of this. Then the reply brief three or four times says Ramos invited Castillo to come along. He called him up. He got the drugs by calling him up. I believe that the actual paperwork that was filed, the written paperwork that was filed says, is titled sentencing memo opposing aggravated role. And so what the attorney is doing, role in the offense takes in all of the facts and circumstances. The pre-sentence report had certain facts in it. The government's discovery provided more. And when you look at the additional facts, it minimizes Ramos' role in this offense. In fact, I mean, the judge at first, you've got to say to the judge, we need to resolve disputed issues of fact, but, but attorney McMahon says, I do not need a record. And he's the one who says, I want to go off the record. How is that not a, why aren't we in plain error world? I mean, if this is all about other facts that support an enhancement, but the defense attorney himself says, your honor, can we approach, do you need a record? I do not need a record. Then the court says, so we have undisputed facts. Yes. So the court says the undisputed facts are, I just don't see anyone. I don't see the defense saying we need to resolve disputed facts. No, I don't believe that the defense said exactly those words. I will say that I wish my trial attorneys made more succinct objections, but it's also in the heat of everything. And quite honestly, this court wanted Mr. Ramos to get a higher sentence, and he was going to make him get a higher sentence by revising the pre-sentence report and putting in that he should get an aggravated role. And in response, the defense puts in evidence from the government's discovery that says, look how large this thing is. There's a confidential informant talking about Gammas and Gobbledon. Gammas and Gobbledon, they're negotiating with the undercover agent. The original agreement was for 10 kilos, but then Gammas told the undercover agent on the phone, my boss isn't comfortable doing 10. So he agrees to us doing three, and if it goes through okay, he has the other two. So this is, and then they agree on where the drug transaction is going to take place. Now, Gammas, Ramos is the middleman. He, oh, I'm so sorry. No, you and I, it's no good for you to be that. Finish your sentence. I was just asking. So if you look at the factors, I'm going to see. If you look at the factors involved under the sentence admission set out, that our case is set out, this is a case where there's clear error, where it's not plausible. And just to let you know, real quick, the sentence is 37 to 46. Sorry. Thank you. And your case is under submission. Next case, Arenas v. Calhoun.